# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAMON LANDOR, | : | CIVIL NO. 1:12-CV-1329 |
| Petitioner, | : | (Judge Caldwell) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| ERIC WILSON, et al., | : | |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

### I. Introduction

This is one of two federal habeas corpus petitions filed by Damon Landor, a federal prisoner, protesting disciplinary hearings, and prison placement decisions that Landor believes have led to his placement in the Special Management Unit of the United States Penitentiary, Lewisburg. In this particular habeas corpus petition, Landor invites us to examine the results of a prison disciplinary hearing conducted in January of 2010, in a federal prison in Kentucky, a decision which was vacated by the Bureau of Prisons Regional office in February 2010. On these facts, where the specific disciplinary proceeding that Landor challenges in this action was vacated by prison officials long before this petition was filed, we conclude that this particular petition is moot, and should be dismissed.

## II. Statement of Facts and of the Case

The Petitioner, Damon Landor, is currently incarcerated at the United States Penitentiary ("U.S.P.") Lewisburg, where he is serving a 120-month sentence imposed in the United States District Court for the Eastern District of Louisiana for a conviction of conspiracy to distribute and intent to distribute cocaine hydrochloride. (Doc. 9 Declaration of Michael S. Romano, Ex. 1 ¶ 2; Public Information Inmate Data, Attach. A.) Prior to his transfer to the Lewisburg Penitentiary, Landor had been housed at the United States Penitentiary in McCreary, Kentucky. On January 6, 2009, while Landor was confined at U.S.P. McCreary, Landor received an incident report (No. 1818253) for a serious prison infraction, possession of a weapon. (Id., Romano Decl. Ex. 1 ¶ 3; Inmate Discipline Data – Chronological Record, Attach. B at 4, 7.) On January 21, 2010, a hearing was conducted on this infraction at U.S.P. McCreary, which resulted in an initial finding that Landor committed this offense. (Id.)

Landor appealed the decision to the Mid-Atlantic Regional Director of the Bureau of Prisons, using the BOP's administrative remedy procedures and asked that the incident report be expunged. (Id., Romano Decl. Ex. 1 ¶ 4; Regional Administrative Remedy Response to Remedy No. 577096-R1, Attach. C). On February 12, 2010, the Regional Director for the BOP's Mid-Atlantic Region

responded to Landor's appeal, vacating the sanctions initially imposed upon Lander and explaining to the Petitioner that:

> Upon review, we are remanding the incident report to the institution for further investigation. If you[r] behavior is determined to warrant such action, you will receive written notice of the charge(s), and will be afforded the opportunity to be present at any subsequent hearing.

(Id.)

Three months later, on May 11, 2010, Landor was transferred from U.S.P. McCreary to U.S.P. Lewisburg. (Id., Romano Decl. Ex. 1 ¶ 5; Inmate History Attach. D). This Incident Report was then rewritten and reissued at the Lewisburg Penitentiary on December 7, 2010. (Id., Romano Decl. Ex. 1 ¶ 7; DHO Packet Attach. G at 4-6.) A copy of the incident report was provided to Landor that same day. (Id.) A disciplinary hearing was then conducted at the Lewisburg Penitentiary on March 23, 2011, which resulted in sanctions against Landor including: disallowing forty days good conduct time, thirty days disciplinary segregation, a 180-day loss of visitation privileges, and a disciplinary transfer. Landor has challenged this second disciplinary proceeding and the sanction in a separate habeas corpus petition. Landor v. Bledsoe, Civil No. 1:12-CV-1331(M.D.Pa.).

At the same time that prison officials conducted this second disciplinary hearing, Warden Bledsoe also addressed another concern voiced by Landor regarding his transfer to the Lewisburg Penitentiary, writing to Landor and explaining both that

3

Landor would receive a rehearing on his weapons possession disciplinary citation, and that Landor's transfer to Lewsiburg was not exclusively based on that weapons possession incident. As the Warden stated: "During your time at U.S.P. McCreary you were found guilty of several 200 level incident reports and one 100 level incident report. You received numerous incident reports directed at staff which involved either verbal abuse or assaultive behavior. As a result of your repeated misconduct you were referred for placement in the Special Management Unit." (Id.) In fact, Bureau of Prisons' records document an astonishing history of institutional misconduct by Landor, who amassed more than 50 disciplinary citations between 2005 and 2010, for offenses ranging from threats, assaults and weapons violations, to sexual misconduct, insolence and disobedience with staff instructions. (Id.)

Dissatisfied with the ultimate outcome of this disciplinary proceeding, and this explanation for his prison transfer, Landor has now filed two parallel habeas corpus petition: The instant action, which challenges the vacated disciplinary proceeding conducted in Kentucky in 2010, and a separate action that we will address separately, relating to the March 2011 disciplinary hearing at the Lewisburg Penitentiary. Landor v. Bledsoe, Civil No. 1:12-CV-1331(M.D.Pa.)

In this particular case, because it is undisputed that the sanctions proposed in the Kentucky disciplinary hearing that is the subject of the instant petition were never

enforced and were in fact vacated, it is recommended that this petition be dismissed as moot.

### III. Discussion

#### A. Landor's Petition, Which Challenges a Disciplinary Sanction that Was Vacated and Questions the Transfer of this Inmate to a Special Management Unit after Landor Amassed 50 Disciplinary Citations, Should Be Dismissed

In this case, the Respondents are correct in suggesting that this case is now moot and should be dismissed. The mootness doctrine recognizes a fundamental truth in litigation: "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996).

There is a constitutional dimension to the mootness doctrine.

> Under Article III of the Constitution, a federal court may adjudicate "only actual, ongoing cases or controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Id. (citing Allen v. Wright, 468 U.S. 737, 750-751 (1984); Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 471-473 (1982)). Article III denies the District Court the power to decide questions that cannot affect the rights of litigants before it, and confines it to resolving live controversies "admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Aetna Life Insurance

5

Co. v. Haworth, 300 U.S. 227, 241 (1937). The case or controversy requirement continues through all stages of federal judicial proceedings, trial and appellate, and requires that parties have a personal stake in the outcome. Lewis, 494 U.S. at 477-478. "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" Spencer, 523 U.S. at 7 (quoting Lewis, 494 U.S. at 477).

Burkey v. Marberry, 556 F.3d 142, 147 (3d. Cir. 2009)(dismissing habeas petition as moot). In the context of habeas corpus petitions mootness questions, therefore, often turn on straightforward factual issues. Thus:

> [A] petition for habeas corpus relief generally becomes moot when a prisoner is released from custody before the court has addressed the merits of the petition. Lane v. Williams, 455 U.S. 624, 631(1982). This general principle derives from the case or controversy requirement of Article III of the Constitution, which "subsists through all stages of federal judicial proceedings, trial and appellate ... the parties must continue to have a personal stake in the outcome of the lawsuit." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477-78 (1990) (internal citations and quotations omitted). In other words, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Id. at 477(citations omitted).

DeFoy v. McCullough, 393 F.3d 439, 441-442 (3d Cir. 2005).

Applying this principle, courts have typically dismissed habeas petitions challenging prison disciplinary decisions as moot where it is shown that the prisoner-petitioner has been released from the sentence which he is challenging, or is no longer subject to any disciplinary sanctions, reasoning that such petitions no longer present

6

live controversies within the meaning of Article III of the Constitution. See, e.g., Marine v. Quintana, 347 F. App'x 736 (3d Cir. 2009); Scott v. Schuylkill, FCI, 298 F. App'x 202 (3d Cir. 2008); Scott v. Holt, 297 F. App'x 154 (3d Cir. 2008); Williams v. Sherman, 214 F. App'x 264 (3d Cir. 2007); Razzoli v. FCI Allenwood, 200 F. App'x 166 (3d Cir. 2006)(Dismissing as moot petitions which seek to collaterally challenge the outcome of disciplinary prison proceedings that occurred in the course of a sentence which has now been fully served by the prisoner-petitioner.)

These settled principles apply here and compel dismissal of Landor's petition which attacks a disciplinary hearing outcome that was vacated by the Bureau of Prisons in February of 2010, more than two years ago. Since these Kentucky disciplinary proceedings presently do not lead " ' "to an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." ' Spencer, 523 U.S. at 7 (quoting Lewis, 494 U.S. at 477)," Burkey v. Marberry, 556 F.3d 142, 147 (3d. Cir. 2009)(dismissing habeas petition as moot), Landor's complaints regarding these vacated proceedings are moot, and should be dismissed.

Nor can Landor bring a federal habeas corpus petition based solely upon his dissatisfaction with his transfer to the Lewisburg Penitentiary. In this regard, it is well established that the United States Constitution does not confer any right upon

an inmate to any particular custody or security classification. Moody v. Daggett, 429 U.S. 78, 88 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976). Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." Id. Similarly, it has long been recognized that prison transfer decisions, standing alone, do not constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. See, e.g., Hassain v. Johnson, 790 F.2d 1420 (9th Cir. 1986); Serrano v. Torres, 764 F.2d 47 (1st Cir. 1985). Accordingly, even inmate transfers to facilities far from their homes do not rise to the level of cruel and unusual punishment; See, e.g., Gov't of Virgin Island v. Gereau, 592 F.2d 192 (3d Cir. 1979)(transfer from Virgin Islands to mainland); Rodriguez-Sandoval v. United States, 409 F.2d 529 (1st Cir. 1969)(transfer from Puerto Rico to Atlanta), and well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215 225 (1976); Montanye, 427 U.S. at 242; Bulger v. U.S. Bureau of Prisons, 65 F.3d 48 (5thCir. 1995); Marchesani v. McCune, 531 F.2d 459 (10th Cir.), cert.denied, 429 U.S. 846 (1976).

Simply put, as a legal matter Landor has no constitutional right to choose his prison, and may not, therefore, invite this Court to impose his prison choice on his jailers.

Moreover, to the extent that his petition complains about his prison placement, Landor misconstrues the scope and reach of a petition for writ of habeas corpus. The writ of habeas corpus, one of the protections of individual liberties enshrined in our Constitution, serves a specific, and well-defined purpose. The writ of habeas corpus exists to allow those in the custody of the state to challenge in court the fact, duration and lawfulness of that custody. As the United States Court of Appeals for the Third Circuit has aptly noted: "The underlying purpose of proceedings under the 'Great Writ' of habeas corpus has traditionally been to 'inquire into the legality of the detention, and the only judicial relief authorized was the discharge of the prisoner or his admission to bail, and that only if his detention were found to be unlawful.' " <u>Powers of Congress and the Court Regarding the Availability and Scope of Review,</u> 114 Harv. L.Rev. 1551, 1553 (2001)." <u>Leamer v. Fauver,</u> 288 F.3d 532, 540 (3d Cir. 2002). However, there is a necessary corollary to this principle, one which has long been recognized by the courts; namely, "[i]f a . . . prisoner is seeking [other relief], he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release-the traditional

purpose of habeas corpus. In [such cases], habeas corpus is not an appropriate or available federal remedy." Preiser v. Rodriguez, 411 U.S. 475, 494 (1973).

Thus, where a prisoner wishes to constitutionally challenge some aspect of the conditions of his confinement unrelated to the fact or duration of his detention, courts have repeatedly held that the writ of habeas corpus is not the proper vehicle for bringing this legal challenge. For example, in Leamer v. Fauver, supra, the United States Court of Appeals discussed whether a habeas corpus petition was the appropriate tool for an inmate to use when challenging a prison disciplinary placement or transfer decision, like the decision at issue in this case. In terms that are equally applicable here the Court of Appeals held that these type of claims are not cognizable under habeas, stating:

> When read together, there is a logical and coherent progression of Supreme Court jurisprudence clarifying when [habeas and other civil rights relief] is unavailable: whenever the challenge ultimately attacks the "core of habeas" -the validity of the continued conviction or the fact or length of the sentence-a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition. Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under [other civil rights statutes] is appropriate.

Leamer, 288 F.3d at 542.

Following Leamer, courts have often considered invitations by inmates to use the writ of habeas corpus to examine prison disciplinary placement decisions, including decisions to place federal inmate in special management unit programs. Without exception, these invitations have been declined by the courts as a legal exercise which falls beyond the proper scope of habeas corpus jurisdiction. See e.g., Dickerson v. Diguglielmo, 306 F. App'x. 707 (3d Cir. 2009); Jupiter v. Warden, U.S.P. Lewisburg, 237 F. App'x. 726 (3d Cir. 2007); Levi v. Holt, 193 F. App'x. 172 (3d Cir. 2006); Beckley v. Miner, 125 F. App'x. 385 (3d Cir 2005); Woodruff v. Williamson, No. 06-2310, 2009 WL 703200 (M.D. Pa. March 12, 2009)(SMU placement); McKettrick v. Williamson, No. 06-543, 2006 WL 1307929 (M.D. Pa. March 22, 2006)(SMU placement).

These settled legal tenets control here and are fatal to this habeas petition. Since it is well established that the types of complaints made by Landor regarding his prison transfer simply do not sound in habeas, this petition must be dismissed.

**IV.** **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue. The Petitioner is further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of October 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge